THE SCANDINAVIAN BENEFICIAL AND SOCIAL SOCIETY OF THE
CITY OF ISHPEMING v. FREDERICK J. EGGAN.

*Taking case from jury—Evidence held insufficient, to be taken as true—
Treasurer's deposit of society funds—Responsibility for
their loss—By-law construed.*

A benevolent society recovered judgment against its treasurer for funds
    deposited in a bank which became insolvent.   The evidence for the
    defendant tended to show the deposit, by his predecessor, of the
    funds of the society in the same bank.   That defendant took the cer-
    tificate in his own name as treasurer, the bank declining to issue it
    in the name of the society, and that at a meeting held some three
    months after the last deposit to consider an application for a loan on
    real estate security, the society was advised of the condition of its
    funds, decided not to make the loan, and a majority of the members
    favored the place of deposit selected.   That after the failure of the
    bank the society for a time accepted the loss as its own, relieving
    the treasurer from blame under a by-law reading as follows:   "With
    the exception of $50 to be kept on hand for incidental expenses, the
    treasurer shall make all funds of the society interest bearing, by
    either depositing them in a bank, or by investing them in some other
    safe way that the society shall approve of."   That defendant offered
    to turn over the certificate of deposit to the society, which was
    declined, and that he acted in good faith in the management of the
    funds of the society.

    The circuit judge directed a verdict for plaintiff, holding that the
    evidence for the defendant was insufficient to go to the jury.

*Held*, that the foregoing facts must be regarded as true for the purposes of this case, and from them the jury would have been warranted in finding an approval by the society of the defendant's acts with full knowledge of all the material facts.

*Held*, further, that under the by-law it was the treasurer's duty to make the deposit without any other direction from the society, unless he chose to ask it.

Error to Marquette. (Grant, J.) Argued November 13, 1885. Decided January 13, 1886.

Assumpsit. Defendant brings error. Reversed.

The facts are stated in the opinion.

*E. E. Osborn*, for plaintiff :

The construction of the by-law was a question of law for the court. It clearly requires the approval of the society, of an investment (deposit) of its funds in a bank, as well as in bonds and mortgages. In any event it was directory.

If defendant is liable as a bailee or trustee merely, and not as a debtor primarily, then his subsequent action with regard to the money of the society made him liable as a debtor. The society had no claim against the bank on the certificate of deposit. Defendant alone could enforce it. It was a promissory note to him, not a deposit : *Tripp v. Curtenius*, 36 Mich. 494.

By this commingling of what was, on his theory, his own and the society's money, defendant made himself liable as a debtor : Lewin on Trusts, 3d ed., 332 ; 2 Story Eq. Jur. §§ 1268–70 ; *Wren v. Kirton*, 11 Ves. Jr. 381 ; *Utica Ins. Co. v. Lynch*, 11 Paige, 520 ; *U. S. v. Thomas*, 15 Wall. 337 ; *Lefever v. Underwood*, 41 Pa. St. 505 ; *Massey v. Banner*, 1 J. & W. 241 ; Perry on Trusts, § 447.

*Hayden & Young*, for defendant :

This corporation has tacit power to make by-laws for the government of its conduct and to fix its relations with its officers, and when made they constitute a binding contract : Ang. & Ames on Corp. 11 ed., 325. The by-law was in a foreign language and the meaning of the words could only be arrived at through the testimony of a competent expert, and the correctness of his translation is solely for the jury. The court could construe the by-law as rendered into English, but could not legally render it into that language : 2 Pars. Contracts, 7th ed., 686–7 and note 6 ; *Armstrong v.*

*Burrows*, 6 Watts. 266; *Cabarga v. Seeger*, 17 Pa. St. 519; *Sheldon v. Benham*, 4 Hill, 131. Being unable to make the deposit in the name of the society, by reason of the refusal of the bank so to take it, defendant made the deposit in his own name, as treasurer. Was this a conversion of the money? If not it does not affect his liability. The grounds on which a trustee has been held liable for the loss of trust funds deposited in his own name are either that it was a conversion of the money or from his concealment of the fact, or the nature of the investment, he must have claimed it as his own. There must be wrong or neglect of duty— mere unintentional error is not sufficient: *Grover's Appeal*, 50 Pa. St. 192–93; *Rapalje v. Norsworthy, Exrs.*, 1 Sandf. Ch. 404; *Miller v. Proctor*, 20 Ohio St. 442–49. The acquiescence and approval by the society of defendant's action, with knowledge of the facts, relieved him of liability, if any existed: *Poole v. Munday*, 103 Mass. 174; *Heckert's Appeal*, 69 Pa. St. 272; *Spering's Appeal*, 71 Pa. St. 20; *Scott v. Methodist Church*, 50 Mich. 532; *Loud v. Winchester*, 52 Mich. 183; *Sherman v. Parish*, 53 N. Y. 491–92.

SHERWOOD, J. The plaintiff is a benevolent society, incorporated under How. St. *c.* 164. The purposes of the organization, as stated in its articles of association, are to provide for the relief of distressed members, the visitation of the sick, the burial of the dead, and the general care and assistance of its members. The defendant was its treasurer from October 1, 1882, to April 1, 1884. This suit is brought against him by the plaintiff to recover the amount of a fund belonging to the society, received by the defendant as its treasurer, and by him deposited in the bank of D. F. Wadsworth & Co., of Ishpeming, and which was lost by the failure of that bank on the first day of January, 1884. When he took the office he received from his predecessor $804.87, and when he went out of office there remained a balance due the society, according to the books, of $512.20, and it was for this amount the plaintiff obtained judgment at the circuit. The liability is not denied, unless an excuse ·is shown in the evidence of the defense.

This defense is that the defendant was not liable as a debtor for the money entrusted to him by the plaintiff, but

if he was, he is excused from such liability because of his having deposited the money, as directed by the society, in a bank which had failed, and the loss, to whatever extent, must fall upon the plaintiff, so long as defendant was guilty of no neglect or fault. The by-laws of the society were in the Norwegian language, and were contained in a pamphlet, which was introduced in evidence by the defendant, among which, by-law No. 15, when translated, as the evidence shows, reads as follows: "With the exception of $50, to be kept on hand for incidental expenses, the treasurer shall make all funds of the society interest bearing, by either depositing them in a bank, or by investing them in some other safe way that the society shall approve of." The testimony tended to show when Eggan took the office he received from his predecessor the moneys of the society in part in certificates of deposit on Wadsworth & Co.'s bank, and the balance in money; that this bank was the only one in the county paying 6 per cent. interest on deposits; that it had for some time previous been made the depository of the society's funds; that defendant took an indorsement of the certificates from his predecessor, and redeposited them with the other funds he received in the same bank, upon certificates drawing 6 per cent., payable to him or order, as treasurer; that at the time he made his deposit he wished to do it in the name of the society, but was informed by Mr. Wadsworth that the bank would not take it in that way, and he allowed the banker to determine the form of the certificate, which drew interest at six per cent., if left six months; that the society knew its funds were kept in this bank by the defendant, and defendant understood it was entirely satisfactory; that the defendant never used the funds, or any part thereof, for his individual purposes, and he never had any of his own funds deposited in the Wadsworth Bank; that, about three months after the defendant made his last deposit in the bank, the society, at a meeting, considered the subject of making a loan to an individual who had applied therefor, and offered real estate security for the same, and the defendant was asked by the officers at that

meeting what was the then condition and situation of its funds, and he then and there informed the society of their situation, and in what manner the deposit was made, and defendant told the society it could do as it pleased with the money; that the matter was discussed freely; some of the members were in favor of making the loan, but the majority, after a second session over the matter, decided, by a resolution, that they would not make the loan; that a majority of the members thought Wadsworth's Bank the best place for the money belonging to the society. The defendant was allowed to receive the dividends from the insolvent estate of the bank upon the claim against it, by the officers of the society. The defendant offered to turn over to the plaintiff the certificate of deposit he held for the money which was received. This was declined by the plaintiff; and I find nowhere in the evidence any attempt on the part of the defendant to defraud the plaintiff in any manner, but, on the contrary, the evidence tended to show the utmost good faith in his conduct and management of the society's funds. The testimony also certainly tends to show that there was nothing negligent or imprudent in his keeping the society's funds in the Wadsworth Bank.

The record contains the substance of all the testimony in the case; and the question raised requires us to review it all. The defense was rested on the grounds that the deposit of the money by the defendant, as treasurer, in the bank, was compulsory upon him by a by-law of the society, which by-law required all funds in the hands of the treasurer, except $50 for emergencies, to be *invested* in some bank, or interest-bearing security, and that in making this investment he was allowed no discretion of his own; and, further, that the society knew of and approved the investment; and, further, that after the loss, the society accepted, for a time at least, the result of this situation as its own loss, and exonerated the treasurer from liability; not by any express agreement to that effect, but by an acknowledgment in a meeting of the society that the by-law in question, operating as an express direction to the treasurer to do as he had done,

relieved him from blame, such acknowledgment being followed by the act of the society assuming the loss as its own. The plaintiff, in rebuttal, offered evidence claimed by it as showing, or having a tendency to show, a mingling by the treasurer of this fund with his own funds, and making him liable thereby for the loss. The circuit judge thought the evidence for the defendant insufficient to go to the jury, and charged them to find a verdict for the plaintiff.

. Upon the facts as above stated, which must be regarded as true, I cannot reach the conclusion adopted by the circuit judge. From these facts the jury would have been warranted in finding that the acts of the defendant relied upon for recovery by the plaintiff, if not directed by the society, were fully approved by it, after a full knowledge of all the material facts.

There was no mingling of funds in this case. The deposits made by the defendant under the circumstances above stated, and allowing them to remain in the bank as the defendant did, shows he carefully kept the funds of the society separate, though the certificate was taken individually instead of in the name of the society, and the evidence tends strongly to show there was no intention at any time to mingle the funds of the society with those of the defendant. The circuit judge also failed to give the proper construction to the by-law mentioned. In his statements made to the jury, he says:

" The correct construction to be put upon the by-law which has been introduced in evidence I think really is this: that it was the intention of the framers of the by-law, and the intention of the society, that the treasurer should invest these funds as directed by the society, and that, whenever he proposed to invest any funds for the society, it was his duty to report the same to the society, and get the corporate action thereon. This would apply, no matter whether they were to be invested in a bank, or whether they were to be invested in any other safe security, as the by-laws provided."

If this view is the correct one, it is difficult to see what purpose the by-law was intended to subserve. The

powers and limitations exist and control the action of the society in the disposition of its funds under the above construction, as well without as with the by-law. Something more, I think, was intended by the society in the enactment of the by-law than is stated in the construction by the learned circuit judge, above quoted. By it the treasurer's duty is—*first*, to deposit the funds of the society in some bank which will pay interest thereon, except $50, without any other action or direction of the society, or consultation with any one, unless he chooses to have it. If he is unable to secure such deposit, then he can only make such investment or disposition of the funds as the society may direct and approve. The case was one for the jury, under the facts, with proper directions from the court as to the law.

The judgment must be reversed, and a new trial granted.

CAMPBELL, C. J., and MORSE, J., concurred. CHAMPLIN, J., did not sit.